```
 1                IN THE UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION


 3   _____
                                          )
 4   MARTHA COOK,                         )
               Plaintiff,                 )
 5                                        ) CIVIL ACTION NO.
     VS.                                  ) 4:16-CV-381
 6                                        )
     AT&T CORP.,                          ) 10:22 A.M.
 7             Defendant.                 )

 8          ************************************************

 9   KENNETH COOK, et al.,                )
               Plaintiffs,                )
10                                        ) CIVIL ACTION NO.
     VS.                                  ) 4:16-CV-542
11                                        )
     AT&T CORP.,                          ) 10:22 A.M.
12             Defendant.                 )
     _____)
13
                            MOTION HEARING
14             BEFORE THE HONORABLE ALFRED H. BENNETT
                          AUGUST 12, 2016
15
     APPEARANCES:
16
     FOR PLAINTIFFS:
17   MR. ANTHONY BUZBEE,
     MR. BRET GRIFFIN, AND
18   MR. ANDREW DAO
     The Buzbee Law Firm
19   600 Travis, Suite 7300
     Houston, Texas  77002
20   (713)223-5393

21   FOR DEFENDANTS:
     MR. RICHARD THADDEUS BEHRENS, AND
22   MS. MICHELLE CANNON JACOBS
     Haynes and Boone LLP
23   2323 Victory Ave., Suite 700
     Dallas, Texas  75219
24   (214)651-5668

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

APPEARANCES CONTINUED:

**FOR DEFENDANTS:**
MS. POLLY FOHN, AND
MR. MARK RYAN TRACHTENBERG
Haynes and Boone LLP
1221 McKinney, Suite 2100
Houston, Texas  77010
(713)547-2570

**ALSO PRESENT:**
MR. LEN BRILEY

**COURT REPORTER:**
Heather Alcaraz, CSR, FCRR, RMR
Official Court Reporter
515 Rusk, Suite 8004
Houston, Texas  77002
(713)250-5584

1          **THE COURT:**  All right.  Cause number 16-CV-381, Martha

2    Cook versus AT&T Corporation, as well as cause number 16-CV-542,

3    Kenneth Cook, et al., versus AT&T Corp.

4          Counsel, please announce your appearances for the

5    record.

6          **MR. BUZBEE:**  Tony Buzbee for the plaintiff landowners,

7    Your Honor, in both cases.

8          **THE COURT:**  You want to announce your cocounsel who

9    are with you?

10          **MR. GRIFFIN:**  Bret Griffin for the landowners, Judge.

11          **MR. DAO:**  Andrew Dao, Your Honor.

12          **THE COURT:**  Mr. Dao.

13          **MR. BEHRENS:**  Your Honor, Thad Behrens of Hanes and

14    Boone on behalf of AT&T Corp.  I'm joined by Michelle Jacobs,

15    Poly Fohn, and Mark Trachtenberg of my firm.  And, also, Mr. Len

16    Briley from AT&T Corporation is present in the courtroom as

17    well.

18          **THE COURT:**  Very well.

19          I believe we have a motion to dismiss that's going to

20    be heard today in both cases.  Is that correct?

21          **MR. BEHRENS:**  That's correct, Your Honor.

22          **THE COURT:**  Counsel, your motion.

23          **MR. BEHRENS:**  Thank you.  May I?

24          **THE COURT:**  You may.

25          **MR. BEHRENS:**  Your Honor, when we were here back in

1    May arguing our first motion to dismiss, we identified in detail

2    the fatal deficiencies with plaintiffs' claims, and Your Honor

3    may recall that we also identified that we did not believe,

4    based on prevailing Texas law and the circumstances of -- of the

5    complaint, that those deficiencies could be cured.

6              The Court permitted the plaintiffs to try to amend

7    their complaint, and they amended their complaint twice in the

8    same day in the class action case and then also amended their

9    complaint in the individual case, and in summary, this is what

10   they did.

11             The first thing they did was drop their nuisance

12   claims.  They had alleged a nuisance claim in the individual

13   case.  That's no longer part of the case.  I think an

14   acknowledgment that there was -- is no substantial interference

15   with the use of the property that they can allege here.

16             The second thing they did was they tried to muddy up

17   the waters on when the date of the alleged abandonment was in

18   order to get around the statute of limitations claim.  I'll

19   explain why I don't think they were successful on that venture,

20   but they tried to do it by replacing the previous allegation

21   that the alleged acts of abandonment, which precipitated the

22   trespass being back in 2010, to a new allegation that's fuzzier

23   that had happened, quote, years ago.

24             And the third thing they did was added a new component

25   of damages.  This was the lead leakage issue that the Court

1    specifically asked for an explanation of.  The plaintiffs had

2    referenced this in the argument in their papers last time but

3    not in the complaint, and they've specified now in the complaint

4    that the lead leakage issue is an additional component of their

5    damages, but importantly, what they left unchanged was the

6    theory of their claims here.

7            And as -- as I will explain the facts alleged here,

8    even taken as true as you must on a motion to dismiss, do not

9    state a claim under prevailing Texas law.

10           And as the Court is aware, the case centers here on a

11   cable that was laid under the -- the property owners' property

12   back in the 1950s, and AT&T placed that cable there.  It was

13   buried below plow depth.  The terms of the easement required

14   AT&T to put it below plow depth so it wouldn't interfere with

15   the use of the property, and it happened back in the 1950s

16   according to the allegations in the complaint.

17           And it's undisputed that when AT&T put the cable

18   there, it had express permission to do so, and that express

19   permission came in the form of the easement -- I'm sorry for

20   reviewing, but just to put us all in the same page, Your Honor.

21           The easement itself broadly granted AT&T the right

22   to -- to place, construct, maintain, operate, replace, and

23   remove communication systems, including a host of things.

24   Underground cables was one of them, but there are also -- the

25   grant extends to other types of communication systems as well

1    and has a catch-all at the end of the term that says other

2    appurtenances can also be put in there.  So anything in any way

3    related to communication.

4          And, importantly, the easement says that that -- those

5    rights extend as AT&T may require, quote, from time to time.  So

6    this doesn't have to be something that AT&T has to do every day.

7    Any time AT&T wants to use the easement, they can.  That was

8    what was granted.

9          Importantly, also, the easement itself has no

10   expiration date.  So the plaintiffs' claim here is that at some

11   unspecified time years ago, without ever saying so, AT&T

12   allegedly abandoned the easement by doing things like removing

13   signage and generally not using it.  And their theory is that

14   when that act of abandonment happened, because AT&T did not dig

15   up that cable and remove it, that the continued presence of the

16   cable, which everyone admits was authorized at the time, that

17   failing to remove it before they -- before AT&T allegedly

18   abandoned it constitutes a trespass.

19         And, Your Honor, as I told you when I was here back in

20   May, under Texas law that claim can only sound in contract.

21   Texas law is clear that where the parties' relationship is

22   governed by a contract and the subject matter of the claim

23   arises from the contract and is covered by the contract, in this

24   case removal of the cable, which is a specified term in the

25   easement, that claim can only sound in contract and not in tort.

1          In other words, a trespass claim cannot lie in that

2    situation.  So importantly, the plaintiffs do not cite a single

3    case in Texas or anywhere that supports this

4    abandonment-results-in-a-trespass theory.  They don't have one.

5          On the other hand, we have cited the Court to specific

6    on-point authority, in particular the *Oxy USA versus Cook*

7    case -- happens to be the name Cook again.  I don't know if

8    there's any relation -- and also the *Exxon versus Tyra* case,

9    which are on all fours with this situation because the plaintiff

10   tried to advance the very same theory that the plaintiffs are

11   trying to allege here.

12         In those cases, an oil and gas -- there was an oil and

13   gas lease at issue.  It had been entered into in the '30s, so

14   there was a written permission for the oil company to be there

15   and to drill, and it was continuously drilled and used for some

16   70 years.  And the allegation was that the drilling stopped and

17   that the oil company left its property -- person -- you know,

18   the drilling equipment on the land and that its failure to

19   remove that property before it vacated constituted a trespass.

20         In each of those cases dealing with that very same

21   argument, the courts held that that claim can only sound in

22   contract.  If you want to bring that claim, you can only bring

23   it under the contract, and, therefore, the trespass claim failed

24   as a matter of law.  Plaintiffs -- we've -- we've cited those

25   cases in now two rounds of briefing.  They -- those have yet to

1    be addressed in any of the briefs in opposition to the motion to

2    dismiss.

3              So in sum the easement gave us the specific right to

4    act.  This covers the specific situation, and the claim can only

5    sound in contract.

6              Now -- so that's one ground for dismissal.  Now, there

7    are two separate and independent grounds for dismissal of the

8    claims here.  The first is that for a trespass claim, you have

9    to allege an unauthorized entry, and here the allegations taken

10   as true is that the only entry that occurred was when AT&T

11   placed the cable on this land by permission back in the 1950s.

12   There is no argument that placing the cable there was somehow

13   beyond the terms of the easement that was argued in the

14   opposition briefs or that the -- the -- the lease provided that

15   there was an expiration and AT&T overstayed its welcome.  No

16   argument.

17             The argument is that AT&T by itself, by abandoning

18   the -- the easement, sort of walked into a trespass on its own,

19   but there was no subsequent entry.  In fact, to the contrary,

20   the plaintiffs argue that AT&T has not entered the property

21   since the time of the alleged abandonment.

22             Now, in order to get to that cable being unauthorized

23   to be there, you have to find some express or implied duty for

24   AT&T to remove the cable upon the expiration.  So even if you

25   indulge the theory that AT&T has abandoned -- and I'll tell you

1    why I don't think they've alleged that, but even if you indulge

2    that, you'd have to find some express or implied duty for AT&T

3    to remove the cable.

4           It's undisputed there's no express duty under the

5    easement for AT&T to remove the cable.  It has the right to

6    remove, but not the obligation.  So then the -- the next default

7    that they can go to is an implied duty to install the cable and,

8    again, here we cited to on-point case authority.  I'll point to

9    the *Exxon versus Pluff* case and the *Warren Petroleum versus*

10   *Monzingo* case, which, again, the plaintiffs, in two rounds of

11   briefing, have not addressed.

12          And those cases, they deal with the same situation

13   where a plaintiff tried to allege that even though the

14   instrument that originally provided authority to be there

15   doesn't say so, that there was some implied duty to remove

16   property once it was vacated.  So those cases are on point and

17   haven't been addressed.

18          On the -- on the lead seepage issue, I should stop

19   here for a moment.  The plaintiffs don't claim that that is

20   itself an unauthorized entry.  If you look at the terms of the

21   complaint, that's only an element of damages.

22          The only -- the only legal claim is that we were there

23   beyond our welcome because of the abandonment, so that's not

24   even a claim.  But we've cited the Court to cases that say even

25   if they were to try to say that the lead seepage is itself an

1    unauthorized entry despite your ability to be there, that that

2    can't be a trespass claim either, and, again, the authorities

3    aren't addressed.

4                **THE COURT:**  Even if it seeps outside the easement?

5         **MR. BEHRENS:**  Well, there's no allegation that it has

6    seeped outside the easement.  Remember the easement, by its

7    terms, is the cable and then for -- extends feet beyond the

8    cable.  And all that's alleged in the complaint is that there is

9    some coating on the cable and that by deterioration lead could

10   seep into the property, but there's no allegation that it has or

11   any particulars as to how much or where it's gone.

12               None of that is before you, and as Your Honor knows,

13   you can only consider what's in the complaint on the motion to

14   dismiss, and that's what we have dealt with.

15               **THE COURT:**  Very well.

16        **MR. BEHRENS:**  The last independent ground for

17   dismissal is statute of limitations, and here, as I said at the

18   beginning, they tried to muddy the waters a bit by taking out

19   the former allegation that the alleged acts of abandonment

20   happened in 2010 and now say it happened years ago.  I think we

21   can take as a judicial admission what they mean by that.  In the

22   oral argument last time they tried to modify it to 2013 or 2014,

23   but even under the current complaint it's years ago, and here

24   we're dealing with a two-year statute of limitations.

25               I think there's an agreement by the plaintiffs that if

1    this is a permanent trespass, that it is time barred, and what

2    they have alleged in the complaint and they argue in their

3    response papers is that this trespass is temporary.  And what

4    they're asserting is that by merely labeling the trespass as

5    temporary, that the Court has to accept that and that that is

6    dispositive of the statute of limitations issue.

7         Well, Texas law says that it's not up to the plaintiff

8    to identify that.  That is a legal question for the Court.

9    You're not allowed to just elect -- this is the *Marwardt* case

10   that we cited from the Houston Court of Appeals.  The

11   plaintiffs' not allowed to just elect as temporary or permanent.

12   It flows from:  What is the nature of the facts?

13        And we have state -- we have cited cases to the Court

14   involving the placement of underground cables or above-ground

15   cables, which in each case the courts have characterized as

16   permanent and, again, not addressed by the plaintiffs on the

17   other side.  They don't have a case that says in the underground

18   cable context that that is a temporary trespass.

19        Further, to the extent that they're alleging some

20   contamination theory, we've also cited the Court to cases that

21   say where you're alleging that, that's also in the nature of a

22   permanent trespass, not a temporary one.  And it's not true, as

23   its been argued, that merely because it is physically possible

24   at least in theory to remedy it, what their argument is if it's

25   physically possible to remove the trespass, then it is, by

1    definition, temporary.  The courts haven't interpreted it that

2    way.

3          I mean, under their theory there would be no trespass

4    that could be permanent because I could erect a skyscraper on

5    your land, and I could, in theory, knock it down, but the courts

6    would interpret that to be permanent.

7          The other thing is, is just by the facts here, the

8    alleged action by AT&T happened 65 years ago.  The allegation is

9    that cable has been there continuously for 65 years.  There's no

10   allegation that the cable was changed or that lead was added to

11   it or anything like that.  Whatever was the character of that

12   cable when it was laid 65 years ago, according to their own

13   allegations, has been continuously doing whatever it has been

14   doing, and so it is in the nature of a permanent trespass.

15   So -- and where that's the case, as soon as the alleged acts of

16   abandonment happened under their own theory, if you indulge it,

17   that -- that's when the statute of limitations run, and they

18   admit that it happened years ago.  We have a two-year statute,

19   so on its face it's barred by the statute of limitations.

20         Now, the -- Your Honor, just one moment.  I want to

21   address the other claim.

22         So the remain -- so those are the three independent

23   grounds on the trespass claim.  They also have a declaratory

24   judgment claim based on abandonment, and we went over this last

25   time some, but they haven't really changed it much.

1          The alleged acts of abandonment are removal of signage

2    and equipment, selling of some of the -- of the appurtenances

3    that were on the property, and generally not using and

4    maintaining it.  It's black letter law in Texas that mere nonuse

5    is not sufficient to allege abandonment.  And as to the removal,

6    it's expressly permitted under the easement, and so you can't

7    draw an inference that AT&T has abandoned the easement from it

8    doing something that it was expressly entitled to do and

9    bargained to do under the easement.

10          And so for those reasons we would ask that all of the

11   claims in the complaint be dismissed because they've now been

12   given -- well, they amended their class action complaint now for

13   the third time.  I think it's clear they cannot cure the

14   problems.  We would ask the dismissal be with prejudice.

15          Your Honor, if you have no more questions, I will

16   conclude my argument.

17          **THE COURT:**  Not at this time.  Thank you, counselor.

18          Response?

19          **MR. BUZBEE:**  Yes, Your Honor.  Thank you.  And thank

20   you for letting us have another hearing.  I apologize for not

21   being here the first time.

22          Your Honor, I first want to point out some

23   misstatements about what's in our complaint.  I mean, I want to

24   make sure the Court knows what we're complaining of before we

25   talk about whether -- basically, they're trying to get a summary

1    judgment on the statute of limitations.

2            I'd like to first point the Court's attention, if you

3    would, Your Honor, to paragraphs 15 and 19 of the second amended

4    class action complaint.  Counsel just told you -- stood in front

5    of you and told you that nothing has changed with regard to the

6    cable, yet the facts that we pled clearly demonstrate that the

7    cable has changed and continues to change.

8            In other words, it continues to deteriorate.  It's

9    cut.  The -- the plastic sheathing and the paper surrounding the

10   cable has been cut and damaged and because of that, that's why

11   this -- this contaminant, which -- I mean, here we are at a

12   motion to dismiss stage, and we have an expert that we've

13   attached to demonstrate that, yes, this land is contaminated.

14           I also want to point out to the Court that the way

15   counsel argued this case is as if this is simply a cable.  I

16   think there are pictures in the record, and if there are not, we

17   probably have some here to show you.  But we're talking about

18   major structures that were left on these plaintiffs' property,

19   not just a cable that's somewhere below plow depth.  We're

20   talking about manhole covers, big concrete structures, a lot of

21   various equipment that's just been left behind.

22           I also want to point the Court's attention to

23   paragraph 19, specifically the last sentence where it says the

24   lead cable and, specifically, the plastic surrounding the lead

25   continues to deteriorate and continues to contaminate the

1    subsurface of plaintiffs' real property.  So to suggest that --

2    that this is a case, well, whatever trespass, to the extent a

3    trespass occurred, it's over, and it happened some time 60 years

4    ago, that's -- that's not the -- that's not the case that

5    we're -- that we're trying to make with you, Your Honor.

6          Secondly, I want to point out that when we say --

7    there's two components of this case with regard to this

8    easement.  One, the easement's been abandoned.  Now, counsel has

9    said, well, you haven't pled sufficient facts to demonstrate

10   abandonment, but, Your Honor, we've pled it, and in federal

11   court, when you plead abandonment, that's all you have to plead.

12   It's not state court.  It's not a fraud claim.  It's not a RICO

13   claim.

14          I mean, we plead abandonment, and then we have to

15   plead facts and prove facts when we try the case as to whether

16   there was an intent by AT&T to abandon.  And the Court knows we

17   can't crawl inside -- at a motion to dismiss phase inside AT&T's

18   head to determine whether they've abandoned.  That's a -- that's

19   a -- the Court knows that in a fraud case when -- any time

20   there's intent, you have to look at the circumstances, and so we

21   pled some facts, even though we don't have to, about why we

22   believe we're going to be able to prove that AT&T abandoned the

23   easement.

24          Now, here's what's -- what's interesting.  In all the

25   paperwork that's been filed and every word that's been said in

1  front of you thus far, and I read -- think we've read the

2  transcript, too.  They've never taken a position as to whether

3  they've abandoned it.  They've never said yes or no, we've

4  abandoned the easement.

5       They're trying to play it both ways.  If we abandoned

6  it, we did it a long time ago, but they didn't plead facts to

7  prove abandonment.  And they're saying -- they're creating this

8  heightened pleading requirement that doesn't exist in federal

9  court.  In federal court, it's notice pleading.

10       We've pled you've abandoned the easement.  That's

11  sufficient.  Then we go do discovery, so forth and so forth,

12  and -- and collect those facts, and then a fact finder

13  determines whether there's sufficient circumstantial facts to

14  prove the intent of abandonment on behalf of AT&T.  That's the

15  way it's supposed to work.

16       What they're doing now is trying to play it both ways.

17  They won't take a position, and then they say, well, even if

18  there was abandonment, there's a statute of limitations issue.

19  So I'd like to, before I -- I just wanted to point out a few of

20  those things that are actually in the complaint in black and

21  white, and I would also state that in both of our causes of

22  action -- I want to remind the Court there's two causes of

23  action.

24       The first one is the declaratory judgment.  We're not,

25  in the declaratory judgment, asking this Court to force them to

1   remove this equipment and cable because you can't do that under

2   a declaratory judgment.  What we're asking is the Court to

3   determine the rights and responsibilities between the parties.

4          In other words, is there abandonment or is there not?

5   That is going to be helpful to the plaintiffs and, frankly,

6   helpful to AT&T as to whether there is or is not an easement.

7   That's -- that's the first cause of action, and that's something

8   right in the strike zone of what courts do.

9          In fact, they even cited a case where specific --

10  their case where that's exactly all the plaintiffs sued for,

11  declaratory judgment where the court says -- had a bench trial

12  and said, I find abandonment, and then the court went too far

13  and said, You must remove this equipment and this cable and so

14  forth, and the appellate court, Tenth Court of Appeals I

15  believe -- state court -- said, no, you went a little bit too

16  far there.  That may have been something the court could have

17  done in its inherent injunctive power but not just determining

18  the contract between the parties.

19         So cause of action one, which they've completely

20  ignored which is the first one in our complaint, is the

21  declaratory judgment.  These homeowners are entitled and these

22  property owners are entitled to know whether that easement has

23  been abandoned, and we're entitled to discover that and -- and

24  they can put on their case and finally take a position, and

25  we're entitled to discover the facts and present them to the

1    jury to determine abandonment.

2         **THE COURT:**  A question has come up in my mind even at

3    the initial hearing in that the parties entered into -- entered

4    onto the property to lay this cable.  From the plaintiffs'

5    perspective, when did this right end?  So if they had to -- I

6    mean, was this a continuing easement, or did the plaintiffs have

7    in their mind or is the plaintiffs' contention now that this

8    easement at some point in time would come to a specific end?

9         **MR. BUZBEE:**  The easement would only come to an end

10   once it was no longer used for the purposes of -- for which it

11   was granted.  Black letter case law in Texas.  In fact, Supreme

12   Court case I believe we cited -- U.S. Supreme Court case that --

13   that defines what an easement is.

14        It's not an actual real property right.  It doesn't

15   give -- it only gives you a specific right to use of land for as

16   long as you use it as per the right, and once you -- evidence

17   and intent to abandon, you lose it, and it's extinguished and it

18   never comes back.

19        **THE COURT:**  So when do you contend that the defendant

20   actually ceased to use the easement for the purpose it was

21   intended or abandoned the property?

22        **MR. BUZBEE:**  We don't know exactly because we -- we --

23   we haven't done any discovery.  I mean, we would have to do --

24   every landowner may be different, or there may be some corporate

25   type somewhere at some point that says, hey, look, the

1   technology -- because I've done some informal discovery where

2   the technology changed, and perhaps this easement was no longer

3   necessary for their business purpose, and they went out there at

4   some point -- and it's going to be different, probably, for

5   various landowners, but one overarching, probably, main theme

6   that will be something that can be certified is there's going to

7   be some corporate decisions that were made that we haven't

8   had -- been privy to where they said, We're no longer using this

9   communications cable.

10          Why do we know they're not using it?  Because it's cut

11   in various places, and some of the -- in some of the areas that

12   Mr. Griffin has went out and looked at, people have actually

13   went down and stolen portions of it because some of this could

14   be considered valuable.  Some of this lead could be sold.

15          So at this point in time, Your Honor, I don't -- I

16   can't pinpoint exactly when they abandoned.  What I can say,

17   though, is we have pled that they've abandoned it because the

18   facts and circumstances would support that.

19          Maybe when we discover this case they're going to have

20   some corporate type that says, Okay.  We evidence an intent to

21   abandon on this date.  And then maybe at that point -- because,

22   typically, a statute of limitations is more of a summary

23   judgment issue, not a motion to dismiss issue, at that point the

24   Court may say, I'm granting -- you're going to get your

25   declaratory judgment.  They abandoned on this date, but too bad.

1    I think that the -- the lead that's oozing from this cable is

2    not a sufficient continuing tort, and you're sunk on statute of

3    limitations.

4            But that's not what happens now at this stage of the

5    case.  I mean, they have to take a position.  I mean, I would

6    suggest to the Court, if you want to know when they abandoned

7    it, they're the ones that know that, Your Honor, and they're the

8    only ones that can know that because, just like a fraud case,

9    I'm never going to be able to crawl inside the head of the

10   alleged fraudulent individual.  I have to put facts and

11   circumstances around that the jury can conclude that fraud

12   occurred.

13           **THE COURT:**  What about defendant's contention that any

14   cause of action would sound in contract and not in tort?

15           **MR. BUZBEE:**  I'll get -- I'll give you one example.

16   First off, we cited a case, and -- and for the -- I mean, I

17   certainly hope we cited it.  I'm going to make sure we cite it

18   here because it's almost like they ignored our case.

19           The example would be *Murphy versus Fannin County Elec.*

20   *Co-Op.*  Here, where an electric co-op in fact had an easement --

21   they had an easement that they could maintain their lines.  They

22   could go out and cut trees and clear the easement so they could

23   continue to provide electricity to the community.  What they did

24   instead is they went out and cut limbs and trees, and they also

25   poisoned more than 100-and-some-odd trees killing trees.

1          The court said, You went beyond your easement.  When

2     you went beyond your easement, that is a trespass.  That is

3     cited in our brief.  It's from the Texarkana Court of Appeals

4     from 1997.

5          **THE COURT:**  Well -- and I'm not familiar with that

6     case, but I think we would be in an agreement that if you have

7     an easement and you go outside that easement to poison trees or,

8     in this case, to lay cable, and the cable was laid outside the

9     easement, then that would be considered a trespass.  That's not

10    the facts here.

11         **MR. BUZBEE:**  I disagree, Your Honor.  I don't think

12    AT&T would agree with what you just said.

13         **THE COURT:**  Okay.

14         **MR. BUZBEE:**  I think AT&T would say, no, that still

15    sounds in contract because if we did exceed the authority under

16    our easement, then you sue us for breach of contract, that you

17    don't have a trespass, and that is a major contention because --

18    understand our position, Your Honor.  Once the easement ends,

19    it's gone.  There is no contract anymore; therefore, we're left

20    with tort, and that's what's happened here.

21         So that's one phase.

22         **THE COURT:**  So your position is that, if I heard you

23    correctly, during the time that the easement was used, if there

24    was a problem, any cause of action would sound in contract.

25    Once the easement was abandoned, if it was abandoned, then any

1    cause of action would sound in tort.

2            **MR. BUZBEE:**  I want to just modify that one small

3    amount.  If the easement -- while it still existed, if there was

4    some dispute as to what the easement did or did not allow, that

5    would sound in contract.  The Court would have to determine

6    whether there was an ambiguity, and then the Court would have to

7    determine whether it was or not a breach.

8            But if they exceeded the scope of the easement, I

9    would respectfully suggest that would be a trespass, or if they

10   did things within the easement that were not authorized by the

11   easement, i.e., contaminate the land -- there is no authority

12   within the easement that the counsel read to you that's in your

13   paperwork in the record that allows them to contaminate the

14   land -- that's also outside the scope.

15           That's -- so what I'm trying to suggest to the Court

16   is there's two ways to look at this case, and I think both are

17   equally valid.  One, they exceeded the authority of the easement

18   originally by contaminating our land.  Two, the easement

19   extinguished.  It no longer exists, and they left their property

20   there.

21           Now we have to deal with cleaning it up.  We have to

22   deal with decontaminating our land.  We have to dispose of some

23   of this material that the federal government regulates.  They've

24   caused us a major problem, and there is no longer an easement.

25           So it's a two-phase situation, and the

1   contamination -- the reason I wanted to make sure the Court

2   didn't think we were just throwing contamination out when --

3   because it was referenced, like, one word, you may remember, in

4   the original complaint.  We added additional language to that

5   regard and also hired an expert just to confirm what we believe

6   to be true is yes, in fact, there was and is contamination, and

7   not just a little bit, a lot.

8            So I want to put this in perspective, if you'd allow

9   me.  Here's their position:  They get a limited right to use our

10  land.  They stop using it and no longer have the right.

11           Under Texas law, because they stopped using it for the

12  right that they were given, it extinguishes, but they left

13  equipment on that land that must be disposed of, and some of

14  that equipment has polluted and continues to pollute the land,

15  and AT&T's position is you have no cause of action whatsoever.

16  You don't even have a dec action to determine whether the

17  easement is or is not still in place.

18           Your Honor, I would respectfully suggest that's a

19  ludicrous argument to make.  Now, they have smart lawyers, no

20  doubt, and they parse things.  Removal of signs is not

21  sufficient for abandonment.  This one fact is not sufficient for

22  abandonment.  This is not sufficient -- this is a, I mean,

23  common defense lawyer theme, obviously, but you don't look at

24  individual facts.  You look at the totality of the circumstances

25  once discovery is done, and then the jury decides whether there

1    has been abandonment.

2            If the jury decides there has been abandonment, then

3    the next question would be:  Jury, when do you determine

4    abandonment occurred?  Jury, do you consider this to be a

5    continuing pollution?  And, you know, you'll have to charge

6    them -- obviously, you're going to have some decisions about

7    whether you think this is a continuous tort or

8    temporary/permanent trespass.

9            But that's not here, Your Honor, and that's the reason

10   I wanted to make sure I came here because we're kind of putting

11   the cart well before the horse.  We've done no discovery, and I

12   think the Court asked us not to do any until this issue was

13   resolved.  So we're just kind of operating in the dark, and to

14   the extent that abandonment occurred, they know when it

15   occurred, and we haven't had a chance to ask one question about

16   that.

17           I want to talk about a couple of other things before I

18   sit down because the Court may be tired of hearing from me at

19   this point.

20           We didn't sue for contract.  The reason we didn't sue

21   for contract, our position is no contract exists.  It's gone.

22   The cases they cite -- they cite four primary cases, and counsel

23   said to you several times, Well, y'all didn't spend any time

24   distinguishing our cases.  I went back --

25           **THE COURT:**  Let me ask you --

1           **MR. BUZBEE:**  Yeah.  Yes, sir.

2           **THE COURT:**  You said the contract is gone.  When did

3  the contract leave?

4           **MR. BUZBEE:**  When abandonment occurred.

5           **THE COURT:**  Catch-22.  All right.

6           **MR. BUZBEE:**  You see what position we're in?  This is

7  the position they put us in.  They won't take a position as to

8  when abandonment occurred.  We pled abandonment, which is all we

9  have to do.

10          I mean, we're -- we should be alive and kicking and

11 moving forward, but then they're taking the position, well --

12 you know, it puts us in a catch-22.  Maybe it puts the Court in

13 a catch-22 as well, but perhaps we should do some discovery, and

14 then we'll know if and when it occurred, and then we can deal

15 with statute of limitations to the extent it's even necessary to

16 deal with.

17          Your Honor, the first case they cite -- the primary

18 case they cite is Anthony Griffin brought a case because his --

19 his telephone ad for his law firm was accidentally left out of

20 the Yellow Pages, and instead of suing for breach of contract,

21 he sued for negligence and DTPA.  Well, the court Riley

22 (phonetic) said, Hey, wait a minute.  You had a contract with

23 AT&T.  Sue them for contract, you know.  That's where the right

24 to put your ad in comes from, a contract.

25          They cite the *DeLanney* case as if that somehow is

1    dispositive about what we're talking about here.  It has no

2    relevance to what we're talking about here other than the

3    general principle is that when you sue for a contract, you can't

4    throw in fraud and DTPA on top of it unless you have some

5    additional facts that demonstrate that.  I mean, that's black

6    letter law.

7            They then talk about the *DeWitt County* case.  That was

8    an easement case.  There actually was a suit for breach of

9    contract.

10           I just want to remind the Court in that case they were

11   claiming that -- plaintiffs were claiming that, Hey, you cut

12   down trees that you weren't authorized to cut down via the

13   easement.  There was no argument that the easement had

14   terminated.  There was no argument about abandonment.

15           The plaintiffs said there's an easement.  You exceeded

16   your authority under the easement.  The court had a directed

17   verdict stage after the jury hung up on the issue of breach,

18   said, You know what?  Let me look at that again.  I think that

19   under that language of the easement it's not ambiguous.  They

20   had the right to cut the trees.  I'm entering directed verdict.

21   That was the case.  It had -- not our case here.

22           They cite *Oxy USA versus Cook*.  That's an oil and gas

23   lease case.  Your Honor, to try to -- to dovetail oil and gas

24   lease law which, as the Court knows, in the State of Texas is

25   very detailed and there's a lot of arcane rules about -- about

1    plug and abandonment, what does the oil company have to do, who

2    owns the lease, what are the surface rights, on and on and on.

3    And to somehow suggest that that has any applicability to an

4    easement case, when even in the *Oxy* case they make clear that

5    the lease still existed, it's not relevant to what we're arguing

6    about.

7           The case I would like the Court to look at very

8    carefully, if you get the chance and if you choose to,

9    Your Honor, is the -- I referenced awhile ago, but I want to

10   make sure I give the Court the cite or at least the name of the

11   case.  It's cited in AT&T's brief.  It's *ETC Pipeline versus*

12   *Payne*.  That's the one I was telling you about where the

13   plaintiff sued only for declaratory judgment asking to declare

14   an easement abandoned.

15          The court had a trial as the court was the fact finder

16   himself, and the court made some findings and conclusions of law

17   and overstepped his bounds a bit because there had been no claim

18   for injunctive relief brought, but only asking for a declaration

19   as to the rights of the party -- you know, two parties before

20   the court.

21          In that case the court went a little further.  He not

22   only found that the easement had been abandoned, but then he

23   ordered the defendant to remove its -- its equipment and

24   property.  And the appellate court said, Hey, hold up now.  You

25   can certainly do a declaratory judgment -- and, incidentally,

1   the abandonment occurred in 2002.  The case was filed in 2010.

2   So there's no statute of limitation as to a declaratory

3   judgment, as the Court knows.  I mean, we're entitled to -- and

4   I think rightly so to know is that easement abandoned.

5         But the appellate court said, Hey, wait a minute.  The

6   easement doesn't require them to remove the property.  So you

7   can't order them under the declaratory judgment act to do so.

8   But then the court cited, We're not making a comment on the

9   equitable abilities of the court.  In other words, you didn't

10  sue for injunctive relief, pal.  Maybe if you had of the court

11  could have, in its equitable power, forced them to remove it

12  because it would be the same thing.

13        As an example, Your Honor, you invite me into your

14  court, and I have the authority, under your tutelage, to be

15  here.  But once this hearing's over and you want me gone, I've

16  turned from an invitee or maybe a business invitee to a

17  trespasser.  Now, I haven't -- I didn't go back out and come

18  back in.  I've overstayed my welcome.

19        The same would be true at a theater.  I'm -- I pay my

20  ticket.  I go in to watch the show, but the show now is closing

21  down.  I don't want to leave.  I become a trespasser.

22        To suggest that the case law in this state is that,

23  oh, no, you can't show an unauthorized entry, what you have is

24  an unauthorized stay, and the cases there -- we cited cases.  We

25  can hand you cases that -- that demonstrate that you can turn

1    from an invitee or a right to be on someone's property and all

2    of a sudden become a trespasser.  I mean, it's common sense.

3              You're -- you're a tenant.  You have a lease to be in

4    a property.  Your lease runs out.  The landlord gives you

5    notice.  All of a sudden what do you become?  You become a

6    trespasser.

7              Very common under the criminal laws and under the

8    civil laws, so to suggest -- and maybe that's why they put that

9    down on the list as far as their arguments -- that you need --

10   you need to have a different unauthorized entry is just not

11   consistent with the law, and the case on that would be *Allen*

12   *versus Virginia Hill* cited in our papers.

13             So, Your Honor, I look at this case like this:  AT&T

14   used the land and, unbeknownst to my clients, exceeded the

15   authority of the lease because I would respectfully suggest that

16   the -- we've pled and the evidence will show, when we finally do

17   some discovery, that some of this contamination was occurring

18   even while the -- the easement existed, one.  So that would be

19   where they exceeded the original authority.

20             Two, at some point they abandoned the easement, and by

21   leaving their equipment and property and so forth there, that

22   has become a trespass.  And most importantly before I shut up

23   and sit down is I want to remind the Court that all these issues

24   about the cause of action of trespass and all the arguments that

25   are being made are separate from, of course, the first cause of

1   action, which was for cause of action for declaratory relief.

2           Thank you for your time, sir.

3           **MR. BEHRENS:**  Your Honor -- I'm sorry.

4           **THE COURT:**  Mr. Buzbee, I do have one question for

5   you.

6           **MR. BUZBEE:**  Yes, sir.

7           **THE COURT:**  In regards to your plaintiffs, they are in

8   possession of their property, obviously, and to the extent that

9   contamination has occurred, if any, and contamination has

10  migrated outside the easement, that was the question that I

11  asked the last time that the parties were here.  As to any

12  discovery on that issue, because -- and the reason this question

13  popped into my mind -- you referenced it -- is that you

14  referenced that the contamination may have occurred even when

15  the easement was valid.  They were actually using the cable, the

16  property.

17          Since the plaintiffs are in control of the property,

18  it seems to me that as to that discovery, that they could have

19  conducted that as that they were in possession of the property

20  and could have moved forward with that.  I'm not aware of the

21  record being supplemented to suggest or prove that contamination

22  has actually occurred within the easement or outside the

23  easement.

24          I saw in your complaint that you referenced -- I think

25  it's paragraph 19 -- the cable -- the lead cable and,

```
 1   specifically, the plastic surrounding the lead continues to

 2   deteriorate and continues to contaminate the subsurface of

 3   plaintiffs' real property, but there hadn't been pointed out --

 4   I may have missed it -- where there has been actual evidence of

 5   that contaminate.

 6          MR. BUZBEE:  Two things, Your Honor.  First, I would

 7   point you to paragraph 37, last sentence.

 8          THE COURT:  Same paragraph -- I mean, same complaint?

 9          MR. BUZBEE:  Yes, sir.

10          THE COURT:  Paragraph 37.

11          MR. BUZBEE:  Yes, sir.  Last sentence.

12          THE COURT:  Yes.

13          MR. BUZBEE:  Defendant -- defendant's occupation of

14   plaintiffs' land is outside the original authority plaintiffs

15   granted.  By that I mean, what we're suggesting there is you

16   were never given authority to pollute our land.  Whether the

17   easement existed or didn't exist, whether we're talking about

18   trespass or whenever the abandonment occurred, you never had

19   that authority.

20          I -- as I've stated, I think AT&T's position would be

21   if you're outside the scope of the easement, that still sounds

22   in contract, but that's my --

23          THE COURT:  I would agree with you that the easement

24   did not give AT&T the right to contaminate the property or the

25   easement, if that contamination occurred.  I have a more basic
```

1   question --

2          **MR. BUZBEE:**  Okay.

3          **THE COURT:**  -- evidence of the actual contamination.

4   I see where you referenced that contamination has occurred.  I

5   hadn't seen any soil samples or anything of that nature which

6   suggests that the contamination has actually occurred either

7   within the easement or outside the easement, and that's where

8   I'm at.  Did I miss that?

9          **MR. BUZBEE:**  Your Honor, you wouldn't see it at the

10  motion to dismiss stage.

11         **THE COURT:**  Right.

12         **MR. BUZBEE:**  You wouldn't see that.  Now, there's a

13  summary --

14         **THE COURT:**  Well, the reason I ask that is because

15  you've referenced the need for discovery.  So I guess it's a

16  more simple question that:  Are you telling me at this stage

17  that you don't need proof of contamination to support your

18  argument?

19         **MR. BUZBEE:**  To support -- to beat a motion to

20  dismiss, absolutely not --

21         **THE COURT:**  Okay.

22         **MR. BUZBEE:**  -- because you have to take as true the

23  pleadings.  I was -- and I probably shouldn't even have

24  mentioned it because I kind of went off on a side rabbit trail.

25         **THE COURT:**  All right.

1        **MR. BUZBEE:**  I was simply suggesting that, you know,

2   they're arguing statute of limitations, and that's typically

3   something at the summary judgment stage.

4        **THE COURT:**  Very well, Mr. Buzbee.  Thank you, sir.

5        **MR. BUZBEE:**  Yes, sir.

6        **THE COURT:**  Counselor, a brief response, and then I'll

7   give Mr. Buzbee the final word today.

8        **MR. BEHRENS:**  Thank you, Your Honor.  I'll just take a

9   few things in order.

10        On the *Murphy* case that was cited to Your Honor, first

11   of all, that did not address the sound in contract doctrine.

12   The other cases that we have cited actually expressly refer to

13   that.  In *Murphy*, what was alleged -- that was the one with --

14   the tree-poisoning case, and so there was an express right to go

15   and care for the trees.

16        An allegation was there was poisoning I believe put on

17   the stumps of the trees that contaminated the property.  So what

18   you had there, unlike what you have here, is some affirmative

19   act taken by the defendant within the limitations period,

20   presumably, where they're actually going in and poisoning the

21   property.

22        Here the only act ever taken by AT&T is placing the

23   cable under the ground below plow depth 65 years ago.  And so

24   whatever the character was of that cable 65 years ago, there's

25   no allegation in the complaint that the -- AT&T has done

1    anything else since then to affirmatively go in and enter on the

2    property.

3             With regard to abandonment --

4        **THE COURT:**  Well, let me stop you there because there

5    is an allegation -- that's what I just spent a little time

6    talking with Mr. Buzbee about -- that the property has become

7    contaminated.  And I grant you that AT&T did not go out and pour

8    contamination within the easement or take an affirmative step,

9    but does it not flow, if in fact I take as true the pleading

10   that contamination has occurred, that it came from the laying of

11   the cable by AT&T?

12       **MR. BEHRENS:**  Well, the con- -- one, I would take

13   issue with whether there's actually an allegation that

14   contamination has occurred as opposed to, because of the

15   character of this type of cable, there's speculation that it

16   could occur, but not that it actually has occurred or -- nor is

17   it stated how much.  And as to Your Honor's earlier point, they

18   are in control of these facts --

19       **THE COURT:**  Just a moment.  I take issue with that

20   argument because, as Mr. Buzbee pointed out in paragraph 19 of

21   his second amended complaint, lead -- the covering of the lead

22   in the cable is badly damaged and lead is directly contacting

23   the soil on plaintiffs' land at multiple points.  The lead cable

24   and, specifically, the plastic surrounding the lead continues to

25   deteriorate and continues to contaminate the subsurface of

1    plaintiffs' real property.

2         So that was the issue the last time we were here, and

3    in this complaint that is a -- pointblank that continues to

4    contaminate the subsurface.  So there is an allegation that the

5    property has been contaminated.

6         **MR. BEHRENS:**  Your Honor, I -- now, see, I think

7    there's some inconsistent allegations in the complaint is what I

8    was referring to.

9         **THE COURT:**  Okay.

10        **MR. BEHRENS:**  There's other allegations, including the

11   one that they change on the same day that they quickly amended

12   their complaint that changed it from it does result in

13   contamination to it could result in contamination.  I think

14   that's what I was referring to, but your point is well taken.

15        Here there is sort of at least a conclusory assertion

16   that lead is touching and that it -- a conclusion that that

17   means contamination.  Now, there's all kinds of issues there

18   with, well, how much, when did it get there --

19        **THE COURT:**  Hence my questions to Mr. Buzbee --

20        **MR. BEHRENS:**  Yes.

21        **THE COURT:**  -- before -- right after you sat down.

22        **MR. BEHRENS:**  All of which could have been pled in the

23   complaint.  What's important here, also, is this came up in

24   their briefing last time, and Your Honor couldn't have been more

25   clear in your requirement to amend, that what you wanted to know

1    about was, Tell me what the lead seepage is and how it fits into

2    your causes of action.  And I submit to you, you didn't get the

3    answers to those questions.

4           If in fact there has been contamination, they could

5    have alleged those facts and made this very easy.  They also

6    could have done what they didn't do and said, well, the lead

7    contamination itself is the trespass.  Remember they say that

8    their trespass claim hinges on their abandonment allegation.

9    That's their legal claim, that the trespass did not occur until

10   the alleged abandonment occurred.

11          And I think they do that because, as they've alleged,

12   the laying of the cable happened 65 years ago, and so if it

13   was -- there was some lead in it, some contaminant in it that

14   was subject to deterioration, that happened a long time ago, and

15   they have a limitations problem they can't get around.  I think

16   that's why we've had some artful pleading that, Our specific

17   trespass we're alleging is the abandonment.

18          Now, Mr. Buzbee said we haven't taken a position on

19   abandonment.  This is a 12(b)(6) stage, and as Your Honor knows,

20   we have to take the facts alleged as true, and it is not

21   sufficient, under the 12(b)(6) law, for you to just, in

22   conclusory terms, say abandonment and King's X, I satisfied my

23   pleading requirement.

24          Under *Iqbal* and *Twombly* you have to allege facts

25   giving rise to a plausible inference of your claim, and here the

1    facts alleged are, one, we don't know when abandonment happened;

2    two, they admit AT&T never said it was abandoning; and so,

3    three, what they're asking the Court to draw an inference here

4    is because AT&T has removed signage and sold some equipment and

5    is generally not using it, that you can infer abandonment, but

6    we know nonuse is not sufficient to state abandonment, and the

7    other actions are expressly permitted by the easement.

8            How can you give an inference of abandonment by us

9    doing something we're -- we're expressly permitted to do?

10           **THE COURT:**  Well, let me ask you this question, then.

11   I want to ask you the -- part two of this question because I

12   don't want to -- I understand you're an advocate, and I don't

13   want to do that for the second part.

14           But the first part, if abandonment has occurred -- I'm

15   not going to ask you if you did it or when you did it, but if it

16   has occurred, would that change my analysis of how to approach

17   the -- this case at the motion to dismiss stage?

18           **MR. BEHRENS:**  Well, at most it would affect the

19   declaratory judgment.  It would not affect the trespass claim

20   because this goes back to the cases where we had an express

21   easement that governed the rights of the parties.  Then in that

22   case, Your Honor, you would say, well, the abandonment occurred

23   on some date, and so that was, therefore, the expiration of the

24   lease, and so did AT&T -- or the -- the easement, did AT&T have

25   an obligation to remove the cable before the lease expired?

1        **THE COURT:**  If it affects, at a minimum, my analysis

2   as to the declaratory judgment, how am I to resolve the issue if

3   the plaintiff has taken the position we don't know when

4   abandonment has occurred, and as to the defendant, the defendant

5   has not specifically stated whether abandonment has occurred or

6   not?

7        **MR. BEHRENS:**  So two -- two parts to that.  One,

8   Your Honor, we can't -- we're not to take -- we couldn't take a

9   position if we wanted to at this stage.

10        **THE COURT:**  Right.

11        **MR. BEHRENS:**  We have to accept what they say is true,

12   and it goes back to what I was just saying.  You have to look at

13   whether, on those facts, they've even stated a plausible basis

14   for abandonment.  But if you found that there was some question

15   as to whether they had stated a claim on their declaratory

16   judgment on abandonment, then at -- what I submit the

17   appropriate thing to do would be is to allow that claim to go

18   forward and to dismiss the trespass claim because regardless of

19   whatever happened with abandonment, the trespass claim fails.

20        Because even if you were to find that abandonment did

21   occur, you still walk headlong into those cases -- *Oxy USA*,

22   *Exxon versus Tyra* -- that said if the contract doesn't say upon

23   expiration we had to remove it, then we don't have to remove it

24   because that's governed by the contract.  That's a sounds in

25   contract, and there are numerous cases we've cited to Your Honor

1    that says we don't have to remove upon the expiration.

2           THE COURT:  And Mr. Buzbee addressed that, I guess, in

3    answer to a question from me as to when the easement ended, and

4    he suggested it was at the point where the easement was no

5    longer being used for the purpose for which it was intended.

6           MR. BEHRENS:  Right.  So to answer the -- I think

7    you're asking has the purpose --

8           THE COURT:  Ended.

9           MR. BEHRENS:  -- is it no longer -- so that goes back

10   to the terms of the easement.  Now, the terms of the easement

11   aren't just underground cable.  It's a broad right.

12          If you look at the text of the easement, it -- we have

13   a broad right to do anything connected to communication systems.

14   Now, AT&T is still in the communication system.  I think the

15   Court can take judicial notice of that, and so -- but we're

16   permitted -- it's not limited to just the cable.

17          If you look at everything in the -- enumerated in the

18   easement, that AT&T's permitted to do anything related to

19   communications, we're permitted to do.  So even if the cable

20   isn't currently being used, if you're to accept as true this

21   allegation at least in one part it's cut -- who cut it, I don't

22   know.  I don't think it's alleged AT&T cut it.  But even if that

23   were the case, that wouldn't by itself mean the easement was

24   over because it's not limited to cable.

25          We can do other things, and, again, we're permitted to

1    remove, replace, construct, maintain, anything related to

2    communication systems.  And if you go back to it, it's a very

3    telling confession that they don't know when the -- this alleged

4    abandonment happened, and they admit we never said that we were

5    abandoning it.  You would have expected, before you come to the

6    Court with a declaratory judgment, if they were taking the

7    position that we had abandoned it, that there would have been

8    some communication between the parties.

9            The property owner would have come to AT&T and said,

10   We think you've abandoned.  There's some ripe dispute there, and

11   we're coming to court.

12           **THE COURT:**  Is it germane to the analysis whether or

13   not AT&T is using the easement for other purposes?

14           **MR. BEHRENS:**  I don't think there's any allegation

15   that AT&T is using it for any other purpose or ever has.

16           **THE COURT:**  Okay.  Well, that goes back to your point

17   that if it's no longer being used for the purposes of the cable,

18   but it was a broad grant of an easement, and "broad grant"

19   meaning other uses other than just the cable, that's why I'm

20   asking you:  Is it germane to ask the question or to determine

21   whether or not in fact AT&T's actually using it for something

22   other than the cable?

23           **MR. BEHRENS:**  Your Honor, before you -- I submit that

24   before you would ever get there -- I think you're talking about

25   discovery.  Before you would ever get there, you would say

1   what's alleged in the complaint, and there is no allegation in

2   the complaint that AT&T's ever done anything with that easement

3   other than use it for communication systems.

4           **THE COURT:**  Very well.

5           **MR. BEHRENS:**  So it's not before you, and based --

6   based on the facts alleged --

7           **THE COURT:**  That's what I asked you, was it germane.

8           **MR. BEHRENS:**  And -- yeah, and I think the short

9   answer is no.

10          **THE COURT:**  All right.  All right.

11          **MR. BEHRENS:**  Thank you, Your Honor.

12          **THE COURT:**  Mr. Buzbee, the final short word.

13          **MR. BUZBEE:**  It -- it actually is germane, Your Honor.

14  He just told you, Hey, we could use it for other reasons other

15  than the cable, essentially admitting they're not using it for

16  the cable anymore.  We've alleged they're not using it period.

17  That's what we've alleged.  We're not alleging that they're

18  using it for some other purpose.

19          So he just essentially admitted they're not using it

20  for the cable.  It's cut.  They're not using it.  They're not

21  using it at all for any purpose.  That's why it's abandoned.

22  That's the point.

23          He said that, Well, at this stage we don't have to

24  take a position.  Well, we pled abandonment, and they denied it.

25  Under federal court rules, as the Court knows, paragraph by

1  paragraph admit, deny, can't confirm or deny, they denied that

2  they abandoned.  So they -- in their pleadings, they took a

3  position in their answer.

4       You can't get them to take a position here, and they

5  say, Well, we don't have to take a position.  Well, actually,

6  you do.  If you're going to argue statute of limitations, you

7  need to tell the Court, since it's your burden to get the case

8  dismissed -- it's your burden, not mine -- then you need to tell

9  the Court when the abandonment occurred so we can determine what

10  the statute issue is which typically, as the Court knows,

11  happens not at a motion to dismiss stage.  It happens somewhere

12  way down the line.

13       And he says that we didn't allege anybody said, "We've

14  abandoned it."  Well, of course we haven't alleged that,

15  Your Honor.  First off, that's not the kind of thing that I

16  would typically put in a federal court pleading.

17       What I would put in a federal court pleading -- for

18  instance, in a negligence case, Company A was negligent and

19  caused damages to the plaintiff, end.  That's federal court

20  pleading.  State court, as the Court knows, I have to put a few

21  facts to support the negligence, but not much.

22       What they're wanting me to do is basically prove to

23  you in the pleadings that abandonment occurred, and that's

24  not --

25            THE COURT:  Well, under *Twombly* you do have to allege

1   or detail out some of the facts as to support the allegation.

2   And so in regards to his point as to abandonment, I am looking

3   for a little bit more meat on the bone, and I think that that

4   was my point in giving -- giving the plaintiffs more opportunity

5   to come back with a amended complaint such that I can be

6   satisfied there was something there.

7          **MR. BUZBEE:**  All right, Your Honor.  Let me -- look

8   at -- what facts would -- just as an example, if you're going to

9   plead abandonment, what would you plead?  Okay.  Previously,

10  when they were using this cable for telecommunications purposes,

11  they had people that would visit the site and inspect and do

12  maintenance.  They would have signs out there.  They would do --

13  they would mow the right-of-way.  Those would be the facts.

14         What did we plead?  We plead nobody goes out there.

15  They've done no maintenance.  They've let the thing deteriorate.

16  They -- obviously, they're not doing mowing.  They've taken away

17  their sign, and they've actually taken away some of the concrete

18  structures.  If that's not facts that support abandonment, I

19  don't know what else I would plead.

20         **THE COURT:**  Well, that answers my question.

21         **MR. BUZBEE:**  Okay.

22         **THE COURT:**  All right.

23         **MR. BUZBEE:**  So we certainly pled those facts, but to

24  suggest that we have to plead that we --

25         **THE COURT:**  A date certain.

1          **MR. BUZBEE:**  Right.  Not possible, Your Honor.

2          So just, again, the dec action, we really need the

3   Court to determine -- that's our cause of action one -- the

4   rights and responsibilities as between the two parties before

5   the Court, and the Court knows there's no requirement that we

6   send them a letter to plead a dec action.

7          Clearly, there's a controversy as to whether there has

8   been abandonment and what -- when it occurred, clearly.  I mean,

9   we've already allotted facts about that which demonstrate

10  there's clear fact issues there.

11         Secondly, I want to point this out to the Court.  The

12  Court may decide, once we determine the abandonment issue --

13  which I would suggest is a fact issue for the finder of fact.

14  Once that's determined, the Court may charge the jury:  When did

15  abandonment occur?  When do you find, based on the facts,

16  abandonment occurred?

17         When that date is put in there, the Court may say, You

18  know what?  They gave damages for trespass, et cetera, but I

19  find that your trespass claim was barred by statute of

20  limitations.  Happens all the time, as the Court knows.  Juries

21  have to determine when did the statute of limitation run or

22  something like that, happens -- and the Court's probably charged

23  juries in that effect.

24         But here's the third thing.  What -- once the -- the

25  easement terminates and is abandoned, there's going to be a

1  question -- and I've already showed the Court, number one, we're

2  alleging that they used the easement outside of their authority,

3  and, number two, now they're using our land without any

4  authority.  So two phases of our case.

5         There's case law out there that says -- and, again,

6  these are cases that they cited -- that you know what?  You

7  can't sue to force us in an oil and gas lease, because it's not

8  in the lease, to take our stuff back.  But what happens to that

9  stuff?  So at some point either they're trespassing and it's got

10 to be removed, or we're going to have to remove it with damages,

11 or there's going to be a finding that, okay, we own all that

12 stuff.  It -- the rights to that stuff enures to the surface

13 owner.

14        I mean, that's obviously an issue.  Under some oil and

15 gas leases they have a reasonable amount of time to remove their

16 stuff.  To the extent they don't remove their stuff, it becomes

17 owned by the oil and gas -- by the lessor.  I would suggest

18 that's a trespass.

19        It would be the same thing as you accidentally

20 building a house encroaching upon your neighbor's property line,

21 and it's been there forever.  It's a continuing trespass.  When

22 the property owner figures it out, like once we figured out that

23 this had been abandoned, once we figured out there's

24 contamination, adjacent property owner sues to have that removed

25 or to be paid to have it removed.  That's more of our case

1   because there's no right to have your stuff on our property

2   anymore.

3           And with that, Your Honor, I'd ask that you deny the

4   motion to dismiss, that you allow us to do discovery.  And when

5   we get to summary judgment, you may hear some of this stuff

6   again, I'm assuming.

7           **THE COURT:**  Very well.

8           **MR. BUZBEE:**  Thank you.

9           **THE COURT:**  All right.  Counsel, what I intend to do

10  is to put my thinking hat on and to get this issue resolved here

11  straightaway.  Once I make the determination on the motion to

12  dismiss -- obviously, if it's granted, then that's one set of

13  facts.  If I deny the motion to dismiss, we'll proceed with

14  discovery, but that will all be laid out.

15          But I'll first dispose of these motions such that

16  we'll know what the playing field is, and I'll do that

17  straightaway.

18          Counsel, anything else, sir?

19          **MR. BUZBEE:**  No, sir.  Thank you for your time.  Good

20  to be here.

21          **THE COURT:**  Counsel, anything else?

22          **MR. BEHRENS:**  Thank you, Your Honor.  Thank you.

23          **THE COURT:**  Very well.  We're adjourned.  You're

24  excused.

25      *(Proceedings concluded at 11:23 a.m.)*

1                              -o0o-

2          I certify that the foregoing is a correct transcript

3   from the record of proceedings in the above matter.

4

5   Date:  September 14, 2016

6                           /s/ Heather Alcaraz
                            Signature of Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25